■   GALE P. ELSTON, P.C., Appellant, v MARIE-HELENE DUBOIS, Respondent. [795 NYS2d 33]—

Order and judgment (one paper), Supreme Court, New York County (Debra A. James, J.), entered October 3, 2003, which, following a nonjury trial in an action to recover use and occupancy payments, dismissed plaintiff's complaint, unanimously reversed, on the law, without costs, the complaint reinstated, and the matter remanded to another justice to determine the use and occupancy owed plaintiff, if any, from October 1998 through March 2001.

Plaintiff Gale P. Elston, P.C. (GPE) is a professional corporation whose principal, Gale Elston, Esq., is an attorney licensed to practice in the State of New York. GPE, at all times relevant herein, was the prime tenant of a loft on the fifth floor of the building designated as 425 Broome Street, New York, New York. The lease for the premises, executed by Hip Hin Realty Corp., as owner, and Ms. Elston, provided that the loft shall be used

---

for "office space and art gallery," although plaintiff claims the premises were occupied residentially with the landlord's knowledge and consent.

The loft was divided into two separate areas, a northern portion, which was rented out as one unit, and a southern portion, which was subdivided and leased to various individuals who had their own bedrooms, but shared a kitchen, bathroom and living room. Defendant Marie-Helene Dubois executed a month-to-month "studio share agreement" in August 1997 for $1,200 per month and, pursuant thereto, occupied her room and paid the rent without incident for approximately one year. In October 1998, however, Ms. Dubois ceased paying rent and GPE, after serving a 30-day notice of termination, commenced the first of a series of holdover proceedings against Ms. Dubois.

GPE did not prevail until the sixth holdover proceeding was resolved in March 2001, although Ms. Dubois now maintains that she has not resided in the premises since March 1999. In any event, during the course of the proceedings, the relationship between the parties deteriorated into a physical confrontation in March 1999, which resulted in Ms. Dubois' arrest and prosecution for assault, a charge of which she was later acquitted. Ms. Dubois notes that the criminal court issued temporary orders of protection which precluded her from returning to the premises, although a review of those orders clearly contradicts Ms. Dubois and indicates that with the exception of one brief interval from April 26, 1999 to May 17, 1999, Ms. Dubois was simply ordered to refrain from harassing Ms. Elston, and was not barred from her own residence.

GPE, before the summary proceedings had reached their conclusion, commenced the within action for recovery of use and occupancy from October 1998 through March 2001, which prompted Ms. Dubois to counterclaim for intentional infliction of emotional distress, false arrest and various other torts arising out of the criminal case. The counterclaims were subsequently dismissed and the matter went to trial in March 2003 on GPE's use and occupancy claim.

The trial court subsequently concluded that it was unable to credit much of Ms. Elston's testimony, apparently basing its credibility determination upon the fact that the premises were used for residential purposes in contravention of the terms of the prime lease, a matter not germane to this appeal. The trial court credited Ms. Dubois' testimony and found that: Ms. Elston breached the studio share agreement on a number of occasions; Ms. Elston instigated the physical confrontation in March 1999; Ms. Dubois' tenancy ended in March 1999, despite the fact that

she kept her bedroom padlocked, and therefore owed no use and occupancy after that date; and plaintiff was owed no use and occupancy from October 1, 1998, when Ms. Dubois stopped paying rent, to March 30, 1999, because, inter alia, "[t]he court is unable to fix monthly use and occupancy since plaintiff failed to sustain its burden to prove by a fair preponderance of the credible evidence the monthly rental value of the southern portion of the premises . . . ." Plaintiff appeals and we now reverse.

It is settled that the doctrine of judicial estoppel "precludes a party who assumed a certain position in a prior legal proceeding and who secured a judgment in his or her favor from assuming a contrary position in another action simply because his or her interests have changed" (*Ford Motor Credit Co. v Colonial Funding Corp.*, 215 AD2d 435, 436 [1995]; *accord All Terrain Props. v Hoy*, 265 AD2d 87, 93 [2000]).

In this matter, Ms. Dubois insists that she surrendered possession of her unit in March 1999, yet in the holdover proceedings commenced and decided after March 1999, Ms. Dubois, in opposition to GPE's initial claims for use and occupancy, never took the position that she was no longer in possession and, instead, defended her possessory claims, contending, in her Civil Court motion papers, that she still "occup[ied]" the premises. Indeed, Ms. Dubois did not acknowledge surrendering possession of the space until March 2001. Accordingly, we find that Ms. Dubois is judicially estopped from maintaining a contradictory position in this action.

We also note that during the course of the trial, counsel for GPE sought the admission of documents submitted by Ms. Dubois in the various Civil Court proceedings which would have shown that Ms. Dubois "vigorously oppos[ed] any attempt by plaintiff to recover possession of the premises." The trial court, however, inexplicably denied their admission as cumulative, despite the fact that those sworn statements were materially inconsistent with Ms. Dubois' testimony, which the court credited. This was error (CPLR 4514; *see Mantuano v Mehale*, 258 AD2d 566 [1999]).

To the extent that the parties' studio-share agreement may have been breached when plaintiff allowed unauthorized persons to remain overnight in the southern portion of the loft, or that plaintiff may not be entitled to recover use and occupancy because no valid certificate of occupancy existed (*see Jalinos v Ramkalup*, 255 AD2d 293 [1998]; *but see Zane v Kellner*, 240 AD2d 208 [1997]), positions maintained by Ms. Dubois in Civil Court but not raised before us, such can be argued on remand when the appropriate compensation figure is

determined. Concur—Mazzarelli, J.P., Saxe, Friedman, Nardelli and Catterson, JJ.